Magistrate Judge Brian A. Tsuchida

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. MJ11-360BAT |
| | ) | |
| Plaintiff, | ) | MOTION FOR DETENTION |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| ERIC MYSZKE-FRANCIS, | ) | NOTING DATE: August 2, 2011 |
| | ) | |
| Defendant. | ) | |

The United States moves for pretrial detention of the Defendant in connection with the Complaint filed in the Western District of Louisiana, pursuant to 18 U.S.C. § 3142(e) and (f).  This case is eligible for a detention order both because it involves a felony offense, other than a crime of violence, involving a minor victim and because there is a serious risk the Defendant will flee.  There is also a rebuttable presumption in favor of detention because there is probable cause to believe the Defendant committed an offense under 18 U.S.C. § 2251 or § 2252A(a)(2)(A), involving a minor victim.  The United States requests the Court conduct the detention hearing on the charges contained in the Complaint filed in the Western District of Louisiana within three days.

## I.    FACTS AND PROCEDURAL HISTORY

1.    The United States intends to proceed by proffer of evidence at the detention hearing and, accordingly, proffers the following facts in support of its request.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

### A.    Procedural History.

2.    On August 2, 2011, a Complaint was filed against, and an arrest warrant issued for, the Defendant in the Western District of Louisiana.  The Complaint charges two offenses: conspiracy to advertise child pornography, in violation of 18 U.S.C. §§ 2251(d)(1) & (e); and conspiracy to distribute child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) & (b)(1).  The Defendant is subject to a mandatory minimum penalty of 15 years of incarceration and a maximum penalty of up to 30 years of incarceration on the conspiracy to advertise charge, and a mandatory minimum penalty of five years of incarceration and a maximum penalty of 20 years of incarceration on the conspiracy to distribute charge.

3.    The United States hereby requests that the Defendant be detained pending trial pursuant to 18 U.S.C. § 3142(e) and (f), and will seek to invoke the rebuttable presumption against the Defendant's release pursuant to 18 U.S.C. § 3142(e)(3)(E), because probable cause has been found that he committed an offense involving a minor victim.

### B.    The Investigation of Dreamboard.

4.    The Defendant is charged on account of his membership on an internet bulletin board that was known to its members as "Dreamboard."[1]  As described in the Complaint, Dreamboard was dedicated to the production, distribution and advertisement of hardcore child pornography, including images and videos of infants and prepubescent minors being raped and in distress.  In January of 2010 and June of 2010, in accordance with the Electronic Communication Privacy Act (ECPA), U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") Special Agents obtained search warrants in the United States District Court for the District of Columbia and obtained a

---

[1] Because Dreamboard remained under investigation, with numerous members still at large, documents previously filed against the members of Dreamboard were filed under seal per the order of the United States District Court for the Western District of Louisiana. Those documents referred to Dreamboard generically as "Bulletin Board A," and to one of its main administrators, Hawkeye, as "Administrator A."  The Complaint filed against this Defendant in the Western District of Louisiana thus contains these generic terms.

No. MJ11- 360 - 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

copy of Dreamboard.  The copy contained the entire content of the Dreamboard website as it existed on the date of seizure.  HSI Special Agents reviewed the contents of the website and observed that it was being used to host a password-protected bulletin board devoted to the transmission and discussion of child pornography.  In June of 2010, at the time Dreamboard was captured, records indicated that it had approximately 600 validated members and that it was an active board, with members continuing to post links and advertisements to images and videos of child pornography daily.

5.      Dreamboard contained thousands of postings and messages containing child pornography and/or advertisements directing members to images and videos of child pornography.[2]  More specifically, the postings and messages advertised depictions of nude minors engaged in sexually explicit conduct.  Most of the advertisements contained preview images of child pornography that were posted directly on Dreamboard and also provided a website and password where the complete file(s) could be downloaded.  Members were required to post child pornography using that method in order to prevent law enforcement detection of the board.  Dreamboard was divided categorically into different subject areas.  Some of these areas included a section specifically for individuals who produced their own child pornography (i.e., users who filmed themselves sexually abusing children) and a section for content containing infants and prepubescent minors being raped and in distress.

6.      Dreamboard listed specific rules in order to gain membership to the board.  Individuals seeking membership were required to upload a certain amount of child pornography to a separate website and provide the lead administrator, "Hawkeye," with preview images and the web address and password for the complete files.  Hawkeye required that the images either contain hard core activity or nudity, and that the minors depicted were under 13.  Hawkeye stated that membership would not be granted unless

---

[2] Numerous Dreamboard postings as well as screen captures documenting membership rules and forum descriptions are included in Attachment A to this motion.

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360  - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    those specific rules were followed.  Once gaining membership, each member could access

2    the board using a login screen name and password.

3         7.    Members of the board were segregated into a hierarchy of four membership

4    levels by Hawkeye.  Each level of membership permitted access to more content on

5    Dreamboard.  An individual could move up in membership level based upon the number

6    and frequency of posts.  The highest membership level consisted of individuals who

7    produce their own child pornography material.

8         8.    The main webpage of Dreamboard was divided into five different areas.

9    Within each of these areas were different sections referred to as "forums."  The forums

10   generally reflected the type of images or videos contained therein.   Some of these forums

11   included: "Homemade Posts Only", "PT Vids", "Boys", "Super Hardcore", "Over 14

12   Videos and pictures", "Over 18 passwords" and "Chat."  "PT" refers to "pre teen" and

13   "hard core" refers to images depicting sexual acts.  Dreamboard also contained specific

14   rules for the type of content to be posted in the forums.  The "Super Hardcore" forum was

15   described as containing material of very young children "getting fucked" and "preteens in

16   distress, and or crying."  The rules stated that if the child looks "totally comfortable" then

17   the child is not in distress and the material does not belong in the "Super Hardcore"

18   section.  The "Homemade Posts Only" forum was described on the main page as a section

19   for only "producers."  Within the forum, the rules stated that it was an exclusive section

20   and only individuals that made their own material could access this forum.  The "PT

21   Vids" section was described on the main board as a section for videos only and the minors

22   depicted must not be over the age of 13.

23        9.    Within each forum, a member of Dreamboard could make a posting which

24   was referred to as a "topic."  Dreamboard contained hundreds of topic posts distributing

25   and advertising child pornography.  Within these posts, members provided preview

26   images of the child pornography they were making available for other members along

27   with the web address and user created password where the complete image collection or

28   video of child pornography could be downloaded.

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360 - 4

10.     Through the board's rules, instructions were provided to all members regarding how to post preview images and how to make the complete images and videos available on another website.  Members were instructed to upload the full images or video to a separate website, and require a password in order to download and decrypt the files. In the topic post advertising the child pornography, members were instructed to alter a part of the web address so that it could not function as a hyperlink; this modification required another member, seeking to view the advertised content, to manually enter the web address into an Internet browser and make the appropriate changes for the web address to be valid.  In addition to making new topic postings, members could also respond to topics posted by other members of the board.  Members could also communicate directly with each other through the use of private messages.

11.     Dreamboard members extensively discussed the use of anonymizing techniques and encryption technology to prevent law enforcement agencies from detecting their illegal activity on Dreamboard.  For example, users were strongly encouraged to use proxy servers, which route internet traffic through other computers so as to disguise a user's actual location, in order to avoid having the user's actual location detected.  Simply put, a proxy server is a computer that acts as an intermediary between a user's computer and a website's server.  When a user sends information to the website's server, the request is routed through the proxy server.  The website's server therefore only records the IP address of the proxy server, rather than the IP address of the user.  That makes it difficult to track the actual location of the user.  Moreover, administrators of Dreamboard deleted IP address information from many posts, so that the location of a user could not be traced.   Users also discussed the necessity to utilize encryption programs such as Truecrypt on their computer drives, which password-protect computer files to prevent law enforcement access to them in the case of a search.

12.     Dreamboard advertised some adult pornography in the "Over 18 Passwords" forum.  However, this forum only contained 125 topic posts.  In comparison, the "Super Hardcore" forum and "PT Vids" forum each contained 500 and 8794 topic

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360 - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

posts, respectively.  Thus, Dreamboard was dedicated primarily to the advertisement and distribution of child pornography.

### C.    Activity of Dreamboard Member SAMSACKK.

13.    After the seizure of the Dreamboard server, the Dreamboard website was restored in an offline, investigative computer lab.  Utilizing this offline version of the bulletin board, HSI Special Agents captured information related to a member using the screen name "samsackk."  Included on the board's profile for SAMSACKK were the following statistics: the user joined the bulletin board on April 24, 2010; made 53 posts,[3] some of which contained prepubescent child pornography as defined by 18 U.S.C. § 2256; was assigned to the second level of membership, VIP; posted most frequently in the "PT Vids" section; and supplied the email address, notvalid@notvalid.fake during member registration.

14.    Law enforcement captured several postings made by SAMSACKK on Dreamboard, including the following, which contained advertisements offering to distribute child pornography:

> a.    On May 16, 20 1 O, SAMSACKK posted an advertisement offering to distribute the file entitled "Piko&Emiko (!!NEW!! Rare trade).mpg.downloading."  The posted advertisement contained a series of color images that appear to be screen/frame captures of a video with time stamps in the lower left corner of each screen/frame. The advertisement depicts a white prepubescent female (hereinafter referred to as "child victim") engaged in sexually explicit conduct. Five of the screens/frames show a frontal view of the partially nude child victim from her knees/thighs to her neck, seated with her legs spread apart, fully exposing her vagina. The child victim is wearing only a white shirt which comes down to just above her waist.  In four of these screens/frames, it appears that an adult's hand is shown in the screen/frame as the adult's finger digitally comes in contact with and penetrates the child victim's vagina. The child victim has little or no pubic development, no visible body hair,  appears to be slight in stature, and appears to be six to nine years of age. Below this advertisement SAMSACKK inc1uded the password of samsackkfordreamboard" as well as three download links, each beginning with "http://filesurf.ru/."

> b.    On June 4, 2010, SAMSACKK posted an advertisement offering to distribute the file entitled "p2010trailer_final.mpg."  The posted advertisement contained a series of color images that appear to be

---

[3] Some of these postings are included in Attachment B to this motion.

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360 - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

screen/frame captures of a video with time stamps in the lower left corner of each screen/frame. The advertisement depicts a nude dark-skinned prepubescent female (hereinafter referred to as "child victim") engaged in sexually explicit conduct. At least two of the screens/frames show a frontal view of the child victim, from her knees to below her chest, seated with her legs spread apart on top of a nude adult male as he is lying on his back. In one of the screens/frames, the child victim is being held around the waist by the adult male's hands as the adult male's erect penis penetrates the child victim's vagina. In another screen/frame, the child victim is being held by the adult male's hands as she is shown holding the adult male's erect penis in her hand as a white substance is shown exiting the adult male's penis. The child victim has little or no pubic development, no visible body hair, is slight in stature as compared to the adult male, and appears to be seven to ten years of age.

The following caption appears in the first screen/frame:

> The Original Princess 2010
> TRAILER
> you've seen the rest, now see the best

Below this advertisement appears the following posting from SAMSACKK, "Young girl gets fucked halfway balls deep." SAMSACKK's posting also included the download link "http://filesurf.ru/186723" and the password of "samsackkfordreamboard."

**D.  Identification of ERIC MYSZKE-FRANCIS as SAMSACKK.**

15.  As a result of information obtained from the seizure of the Dreamboard server, HSI Special Agents were able to identify Internet Protocol ("IP") addresses associated with specific members of "Bulletin Board A." An "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. Each time a member of the site posted a message, the IP address from which the user posted the message was recorded by the site. Those IP records were included in the data seized in January and June of 2010. On the following dates and times, user samsackk was recorded as having conducted activity on Dreamboard using the following IP addresses: 96.240.113.122 between 4/12/2010 and 5/10/2010; 98.117.125.201 between 5/11/2010 and 5/25/2010; and 98.117.123.197 between 5/29/2010 and 6/26/2010.

16.  Using publicly available websites, HSI Special Agents were able to determine that the above IP addresses were operated by the internet service provider (ISP) Frontier Communications.

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360 - 7

17.     An administrative subpoena/summons was served to Frontier Communications requesting information related to the user who was assigned to the above IP addresses. Subpoena/summons responses from Frontier Communications showed the IP addresses resolved to an Internet Account assigned to ERIC MYSZKE-FRANCIS.  The address associated with the account was an apartment in Redmond, Washington.  A summons response from Frontier Communications dated 6/10/2011 revealed that the account was deactivated 7/8/2010.

18.     An administrative subpoena/summons was served on or about June 13, 2011, to Facebook, Inc., for records of user information, account status, and IP logs related to a specific Facebook ID number associated with MYSZKE-FRANCIS.  The subpoena/summons response from Facebook, Inc., showed that the Facebook ID number related to an ERIC FRANCIS.  Further review of the Facebook, Inc., response revealed that from June 5, 2010, through June 22, 2010, MYSZKE-FRANCIS had logged into his Facebook account using IP address 98.117.123.197.  This is the same IP address used by SAMSACKK to log into Dreamboard during one of the time frames indicated above.

19.     On July 5, 2011, HSI received information from a representative of the United States Postal Service (USPS) that MYSZKE-FRANCIS receives mail at the apartment in Redmond, Washington, referred to in Paragraph 17, above.

20.     On July 6, 2011, HSI served a DHS subpoena/summons to the Property Manager at the apartment complex in Redmond, Washington, identified in Paragraphs 17 and 19, above.  A copy of the Apartment Lease Contract indicates that on July 1, 2011, ERIC FRANCIS (also known as ERIC MYSZKE-FRANCIS), with a date of birth of in 1984, signed an Apartment Lease Contract for an apartment in this specific apartment complex, for lease beginning July 1, 2011, through June 30, 2012.  A copy of a Recertification Update form, dated and signed by MYSZKE-FRANCIS on June 30, 2011, indicated that the head of household was ERIC MYSZKE-FRANCIS.  The field entitled "Others to Reside in Apartment" was left blank by MYSZKE-FRANCIS.  The Property

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360  - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Manager advised HSI that this information indicated there are no other occupants in this
2  apartment.

3         **E.**     **The Defendant's Arrest and the Search of His Home**

4         21.     On July 28, 2011, HSI Special Agents executed a federal search warrant at
5  the Defendant's apartment in Redmond, Washington.  Numerous computers and other
6  digital media were found within the residence.  Preliminary computer forensic search
7  results determined that images and videos depicting minor children engaging in sexually
8  explicit conduct were found on electronic storage media within the Defendant's
9  residence.  Additionally, forensic analysis of a Seagate Hard Drive (HD) bearing serial
10  number 6TE0KTXW revealed a cookies.txt file with a file path of
11  hda3\home\efrancis\mozilla\firefox\jpkpw648.default\cookies.txt, containing the text
12  string "hawkeye%20dreamboard."

13         22.     Also on July 28, 2011, and while the search of his residence was being
14  conducted, HSI Special Agents contacted MYSZKE-FRANCIS at his place of
15  employment.  When the agents identified themselves to the Defendant, he immediately
16  began to cry and said he was "scared" of the agents.  HSI Special Agents advised
17  MYSZKE-FRANCIS of his *Miranda* rights, and assisted him in telephoning his father,
18  who was in Redmond, Washington, visiting from Michigan.  MYSZKE-FRANCIS
19  subsequently signed the *Miranda* form and indicated that he was willing to speak with
20  agents without a lawyer present.  MYSZKE-FRANCIS discussed his computer skills with
21  the agents, and repeatedly stated that he wanted to cooperate.  He continued to cry at
22  times, and approximately 20 minutes after the interview began, MYSZKE-FRANCIS
23  advised that he wanted to speak with a lawyer.  HSI Special Agents terminated the
24  interview.

25         23.     While HSI Special Agents spoke with MYSZKE-FRANCIS at his place of
26  employment, the agents who were conducting the search of his residence discovered
27  images and videos of child pornography on digital media seized from the residence.

28

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360 - 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  MYSZKE-FRANCIS was subsequently arrested on probable cause to believe that he

2  possessed child pornography.

3        24.    On August 1, 2011, Special Agent and HSI Group Supervisor (GS) Brian

4  Widener, who is also a certified computer forensics agent, conducted an initial forensic

5  preview of another piece of seized digital media, a Seagate HD bearing serial number

6  5QE39LKG.  This HD contained a file folder entitled "hawkeyeDB."  As noted above in

7  Paragraph 6, "Hawkeye" was the lead administrator of Dreamboard.  Within the file path

8  for this file folder are the letters "HMM."  In a posting to Dreamboard by SAMSACKK

9  dated May 9, 2010, he referred to "Hawkeye" as "HMM."

10       25.    GS Widener also located a large amount of child pornography on the HD,

11  including twelve color images depicting a series of young Asian females (hereinafter

12  referred to as "child victims"), between the ages of 6 to 8 years old, posing for the camera

13  while each is holding a sign containing the following text:

14             a.    "HI HAWKEYE

15             b.    "I LOVE YOU"

16             c.    "I love Dreamboard"

17  One of the child victims is wearing only a pink halter top and white mini skirt,

18  while another is wearing a silver bikini.

19       26.    GS Widener also located the following two videos on the HD, both of

20  which were referenced by SAMSACKK in postings he made to Dreamboard:

21             a.    "Klvn 1202 m3b 11 Yo fk.avi," posted on June 9, 2010

22             b.    "p2010trailer final.mpg," posted on June 4, 2010

23       27.    HSI Special Agents are continuing their review of the digital media seized

24  from the Defendant's apartment.

25       **II.    ARGUMENT**

26       28.    Under 18 U.S.C. § 3142(e), if the Court "finds that no condition or

27  combination of conditions will reasonably assure the appearance of the person as required

28  and the safety of any other person and the community, such judicial officer shall order the

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360 - 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

detention of the person before trial."  Because the Defendant is charged with violations of 18 U.S.C. §§ 2251(d)(1) & (e) and 18 U.S.C. §§ 2252A(a)(2)(A) & (b)(1), there exists a rebuttable presumption that no such condition or combination of conditions exists. 18 U.S.C. 3142(e)(3)(E).  The burden is therefore on the Defendant to overcome that presumption with concrete evidence to establish that there are conditions of release which will ensure both his appearance at trial and the safety of the community.

29.      In determining whether there are conditions of release that will reasonably assure the Defendant's appearance and the safety of any other person and the community, the Court must take into account:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including–
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;  and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;  and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release ... .

18 U.S.C. § 3142(g).  Consideration of the factors enumerated in § 3142(g) supports an order of detention in this case because no conditions of release will ensure the safety of the community and because the Defendant poses a substantial risk of flight.

### 1.      The Nature of the Charged Offenses is Serious

30.      The Defendant is presently charged with multiple felony offenses under Chapter 110 of the United States Code, which constitute crimes of violence within the meaning of the Bail Reform Act.  *See* 18 U.S.C. §3156 (a)(4)(C).  The charges involve a conspiracy to advertise and distribute thousands upon thousands of images and videos of

child pornography, including those of prepubescent children as young as infants and children being violently abused and raped.  The organization that the Defendant chose to affiliate himself with - his membership obtained only by posting large quantities of child pornography to the board - links him with some of the worst of the worst child pornography offenders on the Internet.

31.    Dreamboard was a secured online bulletin board with over 600 members across the globe that was devoted to the production and dissemination of hardcore child pornography.  The site contained thousands of postings of images and videos of children as young as infants being sexually abused, including a section with images and videos posted by members who were producing the material themselves - that is, sexually abusing children, videotaping the abuse, and sharing the videos of their abuse with members of the board.  In fact, members of this online community were rewarded - promoted to higher levels of membership entitling them to greater access to hardcore child pornography on the board - based upon the frequency and volume of their postings.  The membership requirements of the board prevented members from passively viewing the site - to remain a member, members were required to post child pornography frequently.  The Defendant personally posted messages to the board which included images and videos of child pornography.  The users of Dreamboard devoted themselves to obtaining and sharing among members the most unique and private depictions of child sexual abuse that they could find, and encouraged the production of such material for their private sharing.  That makes the Defendant a danger to children.

## 2.    The Case Against the Defendant is Strong

32.    Moreover, as described above, the United States's case against the Defendant is strong.  Postings by Dreamboard member SAMSACKK were traced via IP address to the Defendant's residence.  The Defendant accessed his personal Facebook page from those same IP addresses.  References to the Dreamboard administrator, Hawkeye, have been found on the Defendant's digital media, as well as images of children holding signs about Hawkeye and Dreamboard.  Two videos on the Defendant's digital

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360  - 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

media are the exact same videos SAMSACKK posted comments about on Dreamboard.
And this is only what agents have found in the very preliminary stages of the forensic
analysis; they are continuing their forensic analysis of the digital media seized from the
Defendant's residence.

### 3.    The Defendant Was a Member of Group that Engaged in a Pattern of Activity Designed to Obstruct Justice

33.    This Court should also consider the Defendant's efforts to obstruct justice
and avoid law enforcement detection through the use of encryption and proxy technology.
Dreamboard members consistently touted the benefits of using encryption technologies to
avoid detection by law enforcement and sought advice and counsel from confederates
about where to find and how to implement the best proxy services and which encryption
methods to employ.

34.    At this point, several of the many individuals who have been identified along
with the Defendant have been arrested; however, the vast majority of Dreamboard
members remain at large.  The Defendant has the ability to contact those individuals via
the internet, in order to continue to trade and distribute child pornography, and also to
advise them of the pending investigation and their need to destroy evidence or flee law
enforcement.  He has demonstrated through his membership in Dreamboard that he
actively seeks to obstruct law enforcement's attempts to hold accountable the members of
the bulletin board of which he was a member.  Moreover, there is no practical means, short
of detention, to ensure that he does not use the Internet to contact his confederates.
Internet access is available throughout the community, in libraries, coffee shops, and
elsewhere.  A court order to not use the Internet is not practically enforceable; in any
event, sanctioning the Defendant after he violated such an order would do nothing to
obviate the consequences of that violation - he would have notified his confederates who
would then be able to destroy evidence or flee before they could be apprehended.

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360  - 13

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

### 4.     The Defendant is a Flight Risk

35.     The Defendant has been arrested on two charges which carry mandatory minimum sentences of 15 and five years of incarceration, respectively, and a maximum penalty of 30 years in prison.  The serious penalties that he faces for his crimes provide him with a great incentive to flee prosecution.  The strength of the evidence against him heightens that risk.  The Defendant is a member of a group that has taken extraordinary measures, through encryption and proxy technology, to avoid being detected by law enforcement.  His incentive to avoid being held accountable is all the more real at this point, knowing that he has been caught and the significant penalties that he faces.  His prior behavior should lead this Court to the conclusion that, if released, he will continue his efforts to avoid responsibility for sexually exploiting children by fleeing from prosecution.

### III.    CONCLUSION

36.     ERIC MYSZKE-FRANCIS cannot rebut the statutory presumption against release in this case.  Accordingly, no condition or combination of conditions of release will reasonably assure his appearance, nor will they adequately protect the safety of any person or the community if he is released.  The United States therefore requests that ERIC MYSZKE-FRANCIS be detained pending trial.

DATED this 2nd day of August, 2011.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

S/ Marci L. Ellsworth
Marci L. Ellsworth
Special Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Phone No.:     (206) 553-6677
Fax No.:       (206) 553-2422
Email:         marci.ellsworth@usdoj.gov

MOTION FOR DETENTION HEARING/ERIC MYSZKE-FRANCIS
No. MJ11- 360  - 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

CERTIFICATE OF SERVICE

2       I hereby certify that on August 2, 2011, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the attorney(s) of record for the defendant(s).  I hereby certify that I have served the

5  attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

6

7                                    s/ *Jacqueline Masonic*
                                     JACQUELINE MASONIC
                                     Supervisory Legal Admin Specialist
8                                    United States Attorney's Office
                                     700 Stewart Street, Suite 5220
9                                    Seattle, Washington 98101-1271
                                     Phone: (206) 553-4644
10                                   FAX:   (206) 553-0755
                                     E-mail: Jackie.Masonic@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28